Name: Irvin Musgrove - Pro Se
Address: 1540 S Escondido Blvd, Apt 2310, Escondido, CA 92025
Telephone Phone: 442-286-1876
Email: irvinvsoha2020@gmail.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Musgrove,

Plaintiff(s),

v.

Hanifin,

Defendant(s).

Case No.: 20-CV-0614
(assigned at time of filing)

Exhibits: for Brief Summary

DATE: 12 May 2020
TIME:
CTRM: 2D
JUDGE: Hon. Gonzalo P. Curiel

The attached 'Exhibits' are directly related to the 'Brief Summary' that it will be attached to if the files aren't too large to be sent together. They will be labeled 1 of 2 & 2 of 2 if they are too large. I apologize if I'm not meant to use this as a cover page or the signature page. If I'm not please let me know. Thank you.

Sincerely,

Irvin Musgrove

# BRIEF SUMMARY:
# REFERENCE KEY

**Note:** *The following EXHIBITS 1-11, have a color-coded arrow beneath the word 'EXHIBIT', that corresponds with the colored arrow on a particular page; they relate to a section of that page.*

- EXHIBIT **1** – An item of proof that I sent Margery to confirm to her that my case was taken seriously, totally out of date and with malicious intent.

- EXHIBIT **2** – The actual item of proof which was a change of address I'd given to Susana 1 or 2 months prior to her supposedly sending vital mail to me at the hostile address I'd firmly explained as such.

- EXHIBIT **3** – This termination notice was sent a full 1 month & 1 week prior to the lapse in communication scheduling error, entered as failed.

- EXHIBIT **4-4C** – Another one of the several complaints & pleas that I sent to Margery over the 10-month period.

- EXHIBIT **5** – Proof of my prior experience with Margery, which is why I naturally turned to & believed in which was a huge mistake.

- EXHIBIT **6** – One of my humbling pleas to Margery in hopes she'd intervene and restore justice to my broken family.

- EXHIBIT **7** – Judy's failed attempt rightfully convince Angie to honor my Dr's. RAR, so that I could have the opportunity others do for a home.

- EXHIBIT **8** – Angie's malicious & hurtful way to refuse my RAR and belittle me at the same time.

- EXHIBIT **9** – The great news of Noah's much deserved return home.

- EXHIBIT **10** – A pic of our new home thanks to Joanne & Judy of 'The Legal Aid Society of San Diego', who made the call I needed.

- EXHIBIT **11** – HUD's rules & laws in re: to 'Direct & Vicarious' liability in the housing environment & HUD funded programs.



EXHIBIT 1

**CITY OF OCEANSIDE** — **EXHIBIT 2**

MARGERY M. PIERCE
DIRECTOR

NEIGHBORHOOD SERVICES DEPARTMENT
HOUSING DIVISION

**RECEIPT FOR DOCUMENTATION**

TO: Susane Sub
FROM: Irvin Musgrove

**RECEIVED DEC 1 9 2018**
NEIGHBORHOOD SERVICES HOUSING DIVISION
THIS FORM MUST BE DATE-STAMPED AND INITIALED BY A RECEPTIONIST

- ___ Authorization forms
- ___ Bank statement
- ___ Calworks/Welfare
- ___ Child support/child care
- ___ Disability Verif.
- ___ EDD
- ___ Employment Verif.
- ___ HAP Contract
- ___ Income change
- ___ ID/birth Certs.
- ___ Pay stubs/income
- ___ Personal declaration
- ___ Recert packet
- ___ RFTA
- ___ Social Security/SSI
- ___ Voucher Ext.
- ___ Waiting list update
- ___ Other:

Message: The address I previously used has become hostile. I can use Brother Bennos which is 3260 Production Ave Oceanside CA 92058

⇅↑ *The following is the same as the lines above, I only typed it because of my awful writing.*

Message: The address I previously used has **become hostile.** I can use brother Bennos which is: 3260 Production Ave, Oceanside, CA 92058

SIGNATURE: Irvin Musgrove    DATE: 12/15/18    PHONE: 442-266-7386

FOR OFFICE USE ONLY    DATE: 12/19/18    TIME: 11:47 Am    INITIALS: ___

White copy: Receiving  Yellow copy: ___

*EXHIBIT 2* →



# CITY OF OCEANSIDE
## Community Development Commission

**MARGERY M. PIERCE**
Director

**NEIGHBORHOOD SERVICES DEPARTMENT**
Housing Division

### NOTICE OF ACTION

**May 23, 2018**
**DATE MAILED**

Irvin Ulysses Musgrove
180 Canyon Dr. Apt. 78
Oceanside, CA 92054

THE CITY OF OCEANSIDE NEIGHBORHOOD SERVICES DEPARTMENT INTENDS TO TAKE THE FOLLOWING ACTION:

**XX** TERMINATE HOUSING ASSISTANCE PAYMENTS AT **CURRENT UNIT** EFFECTIVE **JUNE 30, 2018**, DUE TO: UNIT NOT PASSING A HOUSING QUALITY STANDARDS (H.Q.S.) INSPECTION.

REASON FOR THIS ACTION: Unit is not passing the Housing Quality Standards (H.Q.S.) inspection. Should the fail items be completed or repaired prior to the termination date (above), please contact me immediately for a re-inspection so that payment is not interrupted.

This action is based on the following Code of Federal Regulations:

[X] CFR 982.404 MAINTENANCE: OWNER AND FAMILY RESPONSIBILITY; HA REMEDIES.

_____
Susana Soto - Housing Specialist

760-435-3934
Phone number

*1 month & 1 week prior to the final inspection deadline, Susana & Angie mailed me their intent to terminate housing assistance payments at my home if the inspection failed. They both knew of my memory problem due to my disability.*
*They based their decision on the CFR 982.404 MAINTENANCE:... versus their firmly stated 'Abatement' tactic on their own website entitled, 'What Happens if the Owner Still Doesn't Correct The Problems?'; which would have insured that my family wouldn't have spent the next 1 1/2 years living the life & suffering the awful consequences of HOMELESSNESS, which included being torn apart by CPS for over a year! This was during the time that we were grieving the recent death of my fiance and Noah's mom who had died in my arms a few months prior.*

300 NORTH COAST HIGHWAY   OCEANSIDE, CA 92054   (760) 435-3360   FAX (760) 754-8918

FORM-NIA FAILED HQS 3-07


EXHIBIT 3

To the Oceanside Housing Authority:

Susana Soto has done nothing but cause my family to be torn from our home & into homelessness since August of 2018, torn apart due to our homeless situation and inability to always share the same household, & finally torn away from one another because of CPS's unwarranted invasion into our lives due to the main cause of being homeless. Susana's quick, premature, & heartless actions that directly caused us to become homeless have now allowed for the hateful ripping apart of our family. While I took every measure possible to remain stable in Oceana Apartments which I firmly expressed to Susana, she did everything possible to make certain that our family suffer at her hands by forcing us to move from our secure environment into the dangers associated with being homeless with an 11 year old son. My several complaints about her incompetence re: my family's case have repeatedly gone unheard or addressed. When a hate crime is committed, not only are the aggressive parties to blame & responsible for it but also any who stand by and allow it as well as the cowards who choose to allow such evil actions to continue vs stop or at least attempt to stop them especially when relief is sought.

She is the very reason why my family became homeless in the 1st place and reason why we've been made to suffer through it for such a long period of time. I'll now prove how I've done what was needed to not only remain in our secure environment at Oceana Apartments, but have also been intentionally deprived of the opportunity to be secure again by my appointed worker and those who have sat by and repeatedly failed to address my concerns. I will present it in timeline format:

- **June 30, 2018:** Failed the 3rd & final HUD inspection due to a simple case of lapse in communication between the manager & the HUD inspector to have the repair rescheduled after the necessary correction. Repair was completed 1 1/2 weeks prior.
    - The manager failed to contact Sara as she'd taken the responsibility of doing at the time the repair had been completed so the final inspection was never done by that time.
    - **Tuesday July 3, 2018:** Went to the HUD office to ask why the HUD rent portion hadn't been paid because I'd just paid my portion.
    - Patricia looked it up on the computer and informed me that it only showed I had decided to move and no longer be there. I told her that was totally untrue and in fact I had insured Susana of my intent to stay by way of a document I'd given her a month prior. She then told me to write another one saying that I had no intention on moving out so that the HUD portion could be released, which I did. Susana was off that day. Therefore upon Susana's return, she would know that I'd been there and had signed another statement of not having the intention of moving from my home, while I assumed HUD would pay their portion according to Patricia.
- **Monday July 9, 2018:** Received a housing termination notice from Susana due to a failed inspection and HUD's intention not to pay their portion.
    - I called Susana immediately and informed her I'd forgotten about it due to my known bad memory, and that the repair had been completed a week and 1/2 prior to the inspection deadline date.
    - I then called Sara and informed her what had happened and she said she'd tried to contact me as well as the manager repeatedly. I told her it had been complete days prior to the deadline and she said she'd make it a point to



- come to inspect immediately so that my case could be reinstated because she was aware of my situation. Less than 40 minutes later she showed up and passed the repairs and said she'd take them to Susana immediately. I thanked her.
  - I called Susana and informed her that it was all done and asked that I be reinstated so that the HUD portion could be paid because I had no desire or need to move as she knew. She said I'd have to move out because there was nothing she could do. I explained my inability to physically move or afford to and she said I had no choice. She then informed me that since July 1, 2018 my HCV voucher had been active and I needed to manage my time. I didn't understand
  - I met with her a day or 2 later and reemphasized my need to remain in place but she refused to hear it while mentioning how my Caregiver had passed away and I hadn't informed her of it. I told her that with no plan to do so Patty and I had fallen in love and that I hadn't been able to admit it to myself being so entrapped in my 1st time that I'd mourned anyone in life. She then explained the voucher and amounts that I definitely had no will to hear at that time.
  - I remained in my apartment until the middle of August until I was forced to become mentally, emotionally, but not physically ready to move. I had to leave most of my belongings behind because of physical limitations and only being able to afford a small storage space.
  - Welfare provided me with a motel room for the 1st 8 days where I rested from physical and mental exhaustion. I had prearranged Noah to stay temporarily with Paul who was a church acquaintance of his.
  - I left the motel and stopped by Sonya's to rest and talk for a while. She offered me a place on the side of her house to sleep at night as long as I needed to which was a relief at the time. I stayed there until early in November then drama between her and her boyfriend drove me away.I then went to Sheila's who invited me to sleep on her couch. I had offered her and her son a place to shower and rest at any time when I met them at the 'Bread of Life Rescue Mission' a couple of year prior.
- I had begun my apartment search shortly after leaving the motel which made it approximately 2 months after the HCV time had started to run.
- Susana couldn't find the time to reach out to me about the failed inspection on or about the time of its deadline date. She would have realized that a lapse in communication was the reason for its failure but didn't mean it failed. She did however anxiously reach out to terminate my housing on time at Oceana and to inform me of the unchangeable unfortunate event she'd written out that would force me to have to move out while knowing I had not desire to but a need to stay.
- Since I'd gone to Housing on July 3, 2018 to inquire about the HUD rent portion why wouldn't the computer mention the HUD Inspection failure as cause of non payment since it was the reason which actually occurred on Saturday June 30, 2018 and she enforced on Sunday July 1, 2018, although Patricia said my intent to move out was the only reason on July 3, 2018. So she had my new notice of no intention on moving also by July 3, 2018. Why not contact me at that time about my intentions and find out about why the inspection hadn't occurred on or before the deadline date for a clear understanding? Why wait until July 9, 2018 to give me the Housing termination notice through the mail?


EXHIBIT 4A

- **Early November 2018:** Informed Susana by statement I left at the receptionist desk that I could no longer receive mail at 1221 Division St., Oceanside, CA 92054, because it had become a 'hostile environment' as she'd asked me to previously. During that month I was expecting a very important answer in re: A Reasonable Accommodation to allow me to search for a 2 bedroom because of my need for a Live-In Aide instead of acquiring a 1 Bedroom and face the fact that I got a Live-In Aide hopeful a little over a week later, ready to do the background check clearance process. He passes weeks later. As a result, I will now be forced into an additional move within the same month. I'd dread an unfortunate emergency circumstance that would require him to return back East a week later. I'd be forced into returning to a 1Bedroom which would make it 3 in that month and an repeated occurrence landlords would frown upon honoring.
    - I reached Susana by phone to inquire about the answer I sought. She said she'd mail it to the address I had on file at that time. I mentioned changing it and had her to confirm this updated information.
    - I went to the housing office approximately 3-4 weeks later and Angie Hanifin, her Supervisor that actually attempted to help me, looked firmly at me and blurted where I'd been because Susana had been attempting to mail me some very important mail but that she was off. I told her impossible because I'd been checking my mail 2-3 times per week at Brother Bennos. Susana had sent vital mail to the exact same address I had presented in writing as a hostile environment come to find out. This caused the person who had applied to be the Live-In to get discouraged and abandon ship also due to the broken promises I'd make to her which I heard from Housing.
- I received another vital piece of mail prior to the hostile environment's existence, I assumed answered the Reasonable Accommodation Request re: my ability to search for a 2 Bedroom with a Live-In, without a Live-In, or with one already being processed. I also had submitted the information on the Live-In that I mentioned had abandoned ship above.
    - One of the documents informed me that my request had been approved for the Live-In Aide.
    - The other document made reference to me having been successful in the change of a policy, rule or regulation. It also said that it pertained to & conerned my Live-In request.
        - I assumed that Susana had somehow made a mistake that confused her and caused her to combine the 2 unrelated requests because of the acknowledged change in policy, because I was convinced that a Live-In Request couldn't possibly relate to a change in policy at this point especially because 2 or more Live-In requests had been granted to me in the past without any sign of shock or estrangement or documents to initial or sign that would be added in.
            - So I'd spent over a month confused by what to do because Susana never addressed my expressed state of confusion re: exactly what type of shelter should I be seeking at that particular time. So I called Susana and mentioned that she had made a mistake on one of the documents he's sent me. We met in Angie's office and I was excited about my ability to seek in the 2 Bedroom area because they were

**EXHIBIT 4B**
- - - - ▶

- easier to acquire. But when I looked at the voucher and noticed it said 1 Bedroom I mentioned the change in policy to which neither of them knew of or had any knowledge of , even when I asked what policy had been changed in my case recently because I didn't have the document. I never received a response to that question nor did we discuss it.
- On an occasion a month or so later, I was in the Housing office and asking again for the 2 Bedroom search rights with a Live-In potential processing who was guaranteed to be approved. Susana raised her voice firmly in the lobby with others present, how that would be impossible to have deemed an exception to policy. Then why would they after the situation which had occurred 3 or more years prior where a client was allowed to rent a 2 Bedroom without a current Live-In and that he never got one but kept cheating their system by keeping 2 bedrooms. So I asked her why I had to pay for the senseless & inconsiderate actions of a recipient I most likely didn't nor would ever know or be associated with? She had no reply or sign that visually becomes apparent when a great idea on how to help remedy my situation, so I became depressed once more in my search.
- I also presented her with the particulars of a house along with the correspondence between the Landlord, who lived on the East Coast and myself to show her I was who he considered was set on renting it to. I didn't understand the payment standard area but knew that it was only $25 over my allowance although it was 2 Bedrooms vs 1. She firmly rejected it without a hesitation.

I apologize for how bitter or harsh I sound or on this document I'm just extremely irritated right now. In 2012, God blessed me & Noah with the 'Family Unification Program' which gave us a secure place to live as father & son for his bright future. But in 2018, our lives were ripped apart and now in 2019, we're 1 day away for us being torn apart forever because my voice crying for help went unheard. My son is at Polinsky in San Diego, CA and I haven't spoken to him in a week because I don't know how to answer his question, "Dad have you found a home yet?" It would probably be better if I just dropped off of the earth because I'll be forever filled with guilt and shame because the program that gave us a reason to live, became the program which makes me want to die.


Sincerely,



Irvin Musgrove



*EXHIBIT 4C*

# Rent Portion   Inbox ✕   Vital Importance ✕

**Irvin Musgrove** <imusgrove174@gmail.com>
to mpierce
Jun 3, 2014, 1:57 PM

Mrs. Pierce,
First of all I'd like to thank you for your assistance last week and mostly how kind and respectful you were. You know of my situation and for my need to feel security for my son and I, there's a concern I have.
Last week you told me Ilene needed to fill out forms and come into the housing office. I by the way had overlooked an appointment in my stressful excitement. She talked to Keysa and Keysa told her she didn't need her and that she would still need her being clear in writing but didn"t elaborate on that. She did go on to tell her she didn't understand why I needed to meed with people who didn't know the details of my case because she was my housing specialist. Then she told her I needed to bring in payment verification from Calworks which I also did in March or April of this year and it's the same. I know you told me you would roll it my rent payment portion back until the 1st of June, so I'm telling you this just in the case Keysa refuses to after her return from lunch. I provided Calwork verification approximately 20 or so minutes ago and I'm going to attempt to meet briefly with her only for this situation with rent & SDG&E. I apologize for bringing this to you but I don't feel as though I have a choice. If she does refuse, I'm not going to pay my rent today because I took care of SDG&E yesterday, which will cause me to also have to pay a $50 late fee tomorrow when I pray this situation is resolved. Thank you for listening.

Irvin Musgrove

*Email Response Time*
*= 4 Minutes*

**Margery Pierce** <MPierce@ci.oceanside.ca.us>
to me
Jun 3, 2014, 2:01 PM

Dear Irvin,

*She failed to respond for the 10 months, when there was a true threat & damage,*

Keysa is in a hearing right now and she said that it will take about an hour. When she returns, she is going to calculate your rent and yes, it will be effective June 1st. She will send the verification to you in the mail which will go out tomorrow. She also said that if you want to call her around 3:30-4pm. She can tell you what your new rent portion is going to be. Don't worry...everything will be fine!!!!

Sincerely,
Margery

*Until the final meeting, to make light of Noah not being at home.*

*Her response time was 4 minutes & 12 work hours when there was no true threat to my family.*

**Irvin Musgrove** <imusgrove174@gmail.com>
to Margery
Aug 29, 2014, 9:03 PM

Hi Ms. Pierce:
I'm emailing you to inform you about a situation you may or may not be aware of, in order that things remain on the level about a client of the Oceanside Housing Authority who I mentioned to Housing out of concern.
A little history: Ms. Barbara Winters of 1964 College Blvd #158 had a prior caretaker Mary who lived in with her son & boyfriend/husband. There were several instances of her husband Brad verbally chastising & even threatening Ms. Winters which she called in to Housing about in fear and I disclosed at one point. When she would insist they or he leave, he'd threaten her which I offered my help to stop being that she is disabled, elderly and in a wheel chair and for the simple fact that it's abusive period. I had her convinced to get a restraining order but she later declined after coming to an agreement that he move out by January 1st of 2014 which gave them 2-3 more months. They ended up staying past that date as a result. She ultimately obtained new caretakers, but recently allowed him to return. He bought her liquor for her birthday, to my understanding, and about a month ago she was forcibly returned back to a nursing facility and not expected to return. She even called in her rented items to be picked up by the rental company Aarons who was supposed to pick up her big screen & couches today but for some unknown reason failed to do so. She also left her donated computer & air conditioner behind which may be taken by Brad.
Longer story short, her caregiver and Brad have continued to reside in her apartment since she left knowing she wouldn't return; of course all of this is to my understanding. If you know about this situation of course disregard this letter, but if not you may want to check into it because it appears they have no intention of vacating as required by Housing. They could actually go on paying her portion for some time. I'm informing you because I trust in your decision making more so than our property managements.

Thank You,
Irvin Musgrove

*Email Response Time*
*= 12 Work. Hrs,*

**Margery Pierce** <MPierce@ci.oceanside.ca.us>
to me
Sep 2, 2014, 8:02 AM

Thank you for the information. I have forwarded it to the Section 8 Supervising Housing Specialist.

# EXHIBIT 5



we're here for you.

**Main Contact**
📞 (760) 736-6767
📠 (760) 566-1501

☐ **NCHS Carlsbad Health Center**
1295 Carlsbad Village Drive
Carlsbad, CA 92008

☐ **NCHS Encinitas Health Center**
1130 Second Avenue
Encinitas, CA 92024

☐ **NCHS La Mision Health Center**
3220 Mission Avenue Unit 1
Oceanside, CA 92054

☐ **NCHS Mission Mesa Dental**
2216 S. El Camino Real, Suites 121-122
Oceanside, CA 92054

☐ **NCHS Mission Mesa Pediatric Health Center**
2210 Mesa Drive, Suite 300
Oceanside, CA 92054

☐ **NCHS Mission Mesa Women's Health Center**
2210 Mesa Drive, Suite 5
Oceanside, CA 92054

☐ **NCHS Mission Mesa Women's Health Center (Satellite)**
161 Thunder Drive, Suite 210
Vista, CA 92083

☐ **NCHS Oceanside Health Center (Loma Alta)**
605 Crouch St.
Oceanside, CA 92054

**NCHS Oceanside Specialty Health Center**
☐ Behavioral Health ☐ Chiropractic
☐ Dental
619 Crouch St. #100
Oceanside, CA 92054

**NCHS Perris Health Center**
☐ Medical ☐ Dental
1675 N. Perris Blvd. #G1
Perris, CA 92571

**NCHS Ramona Health Center**
☐ Medical ☐ Dental
217 E. Earlham
Ramona, CA 92065

**NCHS San Marcos Family Practice**
☐ Adults ☒ Behavioral Health
☐ Dental ☐ Pediatrics
☐ Women's Health
150 Valpreda Road
San Marcos, CA 92069

a california health center

---

Irvin Musgrove
180 Canyon Dr Apt 78
Oceanside, CA 92054

3-25-2019

To Margery Pierce,

Mr. Musgrove has been under my care of the behavioral health department at North County health services since December 12, 2013. He has been long-term client of our practice. Client is adherent to his medication regimen and attends treatments regularly. Client suffers from major depressive disorder and PTSD. Client remains in long-standing remission from substances. Client has dedicated his last several years to caregiving for his young son. A major focus of Mr. Musgrove's treatment has been to make sure that he getting treatment resources for his son concurrently. He also referred his son to another internal therapist for support and assistance. He is dedicated and motivated to improve his health so his son has a better life and education. There have been no abuse, neglect or other concerns noted throughout my care of patient towards his son. Client's intentions to take care of his son remain positive and for his son's overall well being. We support his reunification with his son. We will continue to assist with case management and other support for housing and other resources that have been greatly difficult for the last 1-2 years. Client with significant grief in the context of loss of his longterm girlfriend that have worsened his mood. We will continue to provide support to client and encourage ongoing support for his family. Due to his medical disabilities client will need assistance with finding and obtaining housing. Please direct any further questions with a client with permission to the number listed below.

Sincerely,

Shayna Walker MD
Tel- 760-736-6767
Fax- 760-736-8680
3-25-2019

MISSION: To improve the health status of our diverse communities by providing quality healthcare that is comprehensive, affordable, and culturally sensitive.

**EXHIBIT 6**

**From:** Judy Davis <JudyD@lassd.org>
**Sent:** Friday, May 3, 2019 10:20 AM
**To:** Angie Hanifin <AHanifin@oceansideca.org>; Keysa Machado <KMachado@oceansideca.org>; Susana Sandoval <SSandoval@oceansideca.org>
**Cc:** Joanne Franciscus <JoanneF@lassd.org>
**Subject:** FW: Dr. Statement

**Warning: External Source**

Good morning,
 We are still waiting for a response from the Oceanside Public Housing Authority as to whether or not you will release the Voucher to Mr. Musgrove.
I have attached the Doctor's note dated March 25, 2019 supporting Mr. Musgrove's need for a Reasonable Accommodation.
The last two sentence make it clear "due to his medical disabilities client will need assistance with finding an obtaining housing. Please direct any further questions with client with permission to the number listed below.
Shyna Walker MD.
 This letter was dated and sent to the Oceanside Public Housing Authority in March 2019,
What resources has the Oceanside Housing Authority provided to Mr. Musgrove based on this letter?
Was he ever provided with a Social Worker to help him find a unit?
Did the Oceanside Housing Authority contact Shyna Walker MD?
The letter also confirms he suffers from major depressive disorder and PTSD>.
This may also be a reason he cannot initiate first contacts when looking for a unit. He has stated he seems to do better if someone is able to help him in the beginning in finding a unit.
A major focus of Mr. Musgrove's treatment has been obtaining treatment services for his son.
His son is currently not with Mr. Musgrove.
Every day the Oceanside Housing Authority delays the decision on providing Mr. Musgrove with a voucher, is a day he can't qualify/or look for housing. It is another day of homelessness for him and another day he is separated from his son.
To make matters worse, the Oceanside Housing Authority terminated his voucher June 30, 2018 for unit not passing HQS standards, then passed the unit a week later? He was advised by the Oceanside Housing Authority he needed to move out. Legally, Mr. Musgrove had other options.
 Please review this letter and see what we can do to assist Mr. Musgrove and his child.
 Sincerely,

Judy Davis
Administrative Hearing Advocate
LEGAL AID SOCIETY OF SAN DIEGO, INC.
216 S. Tremont Street
Oceanside, CA 92054



EXHIBIT 7

Angie Hanifin <AHanifin@oceansideca.org>
Attachments
Apr 4, 2019, 4:47 PM
to Keysa, me

> *The following statements & decisions, were made after the OHA learned that for the initial 9 months that I'd unsuccessfully searched for a home and which they often referred to; my disability's recently acquired PTSD, which derived from trauma caused by the death of a loved one, was to blame for my failure to acquire a dwelling on what would be my 3rd apartment search in 8 years.*

Hello Mr. Musgrove:

The Housing Authority has received your request for extension and reasonable accommodation. Additional information is needed as you have already had 9 months to find a unit, far longer than allowed by our administrative policy. I would like to discuss with you further what Susana Sandoval (Soto) did to your family. I am not clear as to what you are alleging specifically.

1. Please provide how much longer of an extension you are requesting? The Housing Authority will not grant indefinite extensions.
2. Extension request form and list of units you have looked for.
3. The Housing Authority does not provide the services you are asking for - assistance needed to find and obtain an apartment. The Housing Authority is required to:

When issuing a Housing Choice Voucher to a family which includes an individual with disabilities, include a current listing of available accessible units known to the PHA and, if necessary, otherwise assist the family in locating an available accessible dwelling unit;

III. Take into account the special problems of locating an accessible unit when considering requests by eligible individuals with disabilities for extensions of Housing Choice Vouchers

You have not indicated that you need an accessible unit. The Housing Authority has provided you with information about available units. Other voucher holders are able to locate units. If you do need an accessible unit, I have attached information put together for persons with disabilities. In addition, following is a link to the Housing Authority website
https://www.ci.oceanside.ca.us/gov/ns/housing/section8/tenants.asp#disabled Please review the Community Resources for Persons with Disabilities for a list of accessible units in Oceanside. The page also includes links to apartment complexes and property management companies that have worked with the Section 8 program in the past, as well as a link to Go Section 8 Online Rental Listings.

The Housing Authority provides these resources and it is the participant's job to contact landlords and find a unit. If you need resources for a security deposit, you may contact 211 or Interfaith Community Services for possible assistance.

Please update your request, as well as provide an extension request listing the units you have looked at. Upon returning to the office, I will be sending a letter to North County Health Services that the Housing Authority does not provide services to help participants locate units, other than providing referrals as listed above. The letter indicates that you are not able to search for housing on your own, so without additional help from an outside source, providing an extension would not be effective. Will NCHS help you find a unit? Their letter seems to say that they can provide this service. I don't see anything in the case history indicating that you reported that our son is no longer living with you. Has your income changed as well?

Please feel free to contact me so we can discuss this further. I will return to the office on April 11th.

---

**Color Key:**

- 🟦 States their right to deny my RAR, makes clear their obligations & offers to only help to locate accessible dwelling unit.
- 🟨 Blatantly degrades me by comparing my inability to locate a unit to other voucher holders who do.
- 🟩 Reconfirming their role and the disabled person's job to contact landlords & find units even when unable to do so.
- 🟪 Put me on notice that they will contact NCHS vs my doctor, to put them on notice to prevent further misunderstandings.
- 🟥 Blatantly refused my RAR extension request because I was disabled and in need of assistance from a 3rd party.
- 🟧 Sarcastic shot at NCHS re: apartment search assistance and intentional misinterpretation of my doctor's statement.

# EXHIBIT 8



# County of San Diego

SAN DIEGO, CA 92123-1507
(858) 616-5811 • FAX (858) 616-5908

June 16, 2020

Irvin Musgrove
1540 S Escondido Blvd Apt 3310
Escondido, California 92025

To whom it my concern:

This letter is to confirmed that the child, Noah Musgrove was returned to his father's home on June 11, 2020. Mr. Musgrove was instructed by Child Welfare Services to apply for CALWORKS in order to meet this child's basic needs. Please contact me at the phone number or email me if you have any questions. My office hours are from Tuesday through Friday from 7AM to 5:30PM.

Sincerly,

*Jesus Gonzalez*

Jesus Gonzalez, M.S.
Protective Service Worker
HHSA, Child Welfare Services
7947 Mission Center Court
San Diego, CA 92108
**(619) 767-5277**
**Fax (619) 767-5418**
Email: Jesus.Gonzalez@sdcounty.ca.gov

**EXHIBIT 9**

# Plea  Inbox

**Irvin Musgrove** <imusgrove174@gmail.com>  Thu, Mar 28, 2019, 5:11 AM
to Margery

Ms. Pierce,

Please, put yourself in my shoes, even Noah's shoes. His mother abandoned him in 2011. My fiance' whom he loved and was his mom, died much too early and too basically abandoned him. CPS wrongfully takes him for he & I being homeless but staying at a friends temporarily. They saw to it that I too abandoned him. He's a frightened little boy who love everyone and especially his dad who love him with all his heart. He'd rather be with God if there's no being with me and acts out for what could be a number of reasons considering. CPS has my hands tied so I can't go in and just take my son home. He's always seen me as an example of strength, fairness, truth, equality, and safe. Now his thoughts are all over the place and I'm afraid i'm going to wake up to a phone call. You put a program in place that was responsible for bringing us together for which I thank you very much! But it was allowed to tear us apart after we'd become so close and excited about our upcoming times together because we love each other, and all because of a non-advocating worker who made decisions that she knew would most likely cause homelessness, move related hardships, school unsteadiness, stress, even more hardships & stress on the disabled, etc. HUD has cared so much but not doesn't care that it has most of the responsibility in a child who is mentally & emotionally at the point of severely suicidal thoughts & related actions towards those caring for him, because his father has been forced out of his life as we were forced from our stable environment? This situation needs immediate attention before anything else occurs that could further damage the health of my family. What if it were your son or grandson and you were treated the exact same way by those with a moral & ethical obligation to conduct themselves and make decisions in a pro-family manner. Does my son's mental state as well as his dad's not matter to an organization who formed such a program that successfully kept him and his father stable for the past 6+ years? I'd settle with a voucher after being ported out of Oceanside where I'm sure I'll at least receive some sort of support and assistance since I'm in need of it. I remember when Patricia & Rita Mendoza came to my apartment with a total show of support & not to chastise me but to remind me that I was here to change my life for the better therefore I needed to make the necessary changes. My respect & admiration they gained just for showing they cared. Even you when I met with you on a prior occasion. Noah and I only have one another and time may be ticking on his ability to hold it together because he just turned on the 1st of March. I didn't realize that I had new limitations until I met with my Psychiatrist a couple of days ago so I know exactly what I need in order to be successful at securing us a place. I didn't know that grief could affect a person to such a degree and I relate to Noah better also because I can empathize now with him. Please help us right the wrong Susana so graciously did to my family.

Sincerely,

Irvin Musgrove

**EXHIBIT 9A**



Veteran's Villas Escondido
1540 South Escondido Blvd., Escondido, CA 92025

EXHIBIT 10

*EXHIBIT 10*

## 9. Section 100.7. Liability for discriminatory housing practices.

# 24 CFR § 100.7 - Liability for discriminatory housing practices.

- CFR

prev | next

### § 100.7 Liability for discriminatory housing practices.

**(a) Direct liability.**

(1) A person is directly liable for:

(i) The person's own conduct that results in a discriminatory housing practice.

(ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct.

(iii) Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.

(2) For purposes of determining liability under paragraphs (a)(1)(ii) and (iii) of this section, prompt action to correct and end the discriminatory housing practice may not include any action that penalizes or harms the aggrieved person, such as eviction of the aggrieved person.

**(b) Vicarious liability.** A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law.

[81 FR 63074, Sept. 14, 2016]

EXHIBIT 11

IV. **DEMAND FOR JURY TRIAL** *(Would you like a trial by jury on all claims pursuant to FRCP, Rule 38?)*

☒ Yes   ☐ No

I declare under penalty of perjury that the foregoing is true and correct.

_12 November 2020_
Date

Signature *(signed)*

Printed Name: Irvin Musgrove