UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IRVIN MUSGROVE,

Plaintiff,

v.

ANGIE HANIFIN, SUSANA SOTO, MARGERY PIERCE, KEYSA MACHADO, AND OCEANSIDE HOUSING AUTHORITY,

Defendants.

Case No.: 20-cv-00614-GPC

**ORDER DISMISSING THE FIFTH AMENDED COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

**[ECF No. 49.]**

Pursuant to 28 U.S.C. § 1915(e)(2)(B) and for the reasons that follow, the Court **DISMISSES** Plaintiff's Fifth Amended Complaint. Plaintiff will be granted one additional opportunity to file a further amended complaint.

## I.   PROCEDURAL HISTORY

On March 31, 2020 Plaintiff Irvin Musgrove, proceeding *pro se*, initiated this action. ECF No. 1. On the same day, Plaintiff filed a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). ECF No. 2. On June 3, 2020, Plaintiff filed a Third Amended Complaint naming Angie Hanifin, Susana Soto, Margery Pierce, Keysa Machado, and Oceanside Housing Authority as Defendants. ECF No. 13. On August 4, 2020, this Court granted Plaintiff's motion to proceed IFP and *sua sponte*

1

dismissed Plaintiff's Third Amended Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).  ECF No. 15.  On August 5, 2020, Plaintiff filed a Fourth Amended Complaint.[1]  ECF No. 16.  On January 25, 2021, the Court *sua sponte* dismissed Plaintiff's Fourth Amended Complaint without prejudice.  ECF No. 47.  On January 27, 2021, Plaintiff filed a Fifth Amended Complaint ("5AC").  ECF No. 49.

A summons was subsequently issued on the 5AC and Plaintiff attempted to serve Defendants, and later filed requests for entry of default and motions for default judgments against Defendants.  *See* ECF Nos. 48–75.  The Court found Plaintiff's requests for entry of default and motions for default judgment must be denied because Plaintiff had not established that he had properly served the Defendants and had not adequately supported his motions for default judgment.  ECF No. 76.  However, the Court had not yet screened the 5AC pursuant to 28 U.S.C. § 1915(e)(2)(B); had it done so and found the 5AC should not be dismissed, the Court would have been required to order service be made by the U.S. Marshal pursuant to Federal Rule of Civil Procedure ("Rule") 4(c)(3) because Plaintiff is proceeding IFP.  Fed. R. Civ. P. 4(c)(3) ("The court must [] order [service be made by a United States marshal or deputy marshal or by a person specially appointed by the court] if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.").  The Court therefore erred in requiring Plaintiff to personally complete service of the 5AC.

However, under 28 U.S.C. § 1915(e)(2)(B), the Court shall first determine whether the 5AC must be dismissed before ordering the U.S. Marshals to complete service of the complaint.  Accordingly, the Court will now review whether the 5AC fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Plaintiff filed two subsequent amendments to his complaint without seeking leave of the Court. Because Plaintiff had already amended his complaint once as of right and was thus required to seek leave to amend, Fed. R. Civ. P. 15(a), the Court struck these amended complaints from the record.  *See* ECF Nos. 45, 46.

## II.   FACTUAL BACKGROUND

### A. First and Second Reasonable Accommodation Requests

The following facts come from Plaintiff's Fifth Amended Complaint filed on January 27, 2021.  ECF No. 49 ("5AC").  Plaintiff alleges that in June 2018, the Oceanside Housing Authority ("OHA") and his apartment manager "had a lapse in communication" that resulted in the annual Section 8 inspection for his apartment not being scheduled.  *Id.* at 2.[2]  Plaintiff does not explicitly state what the inspection was for, but it appears from the face of the complaint that the inspection focused on whether certain repairs had been completed in Plaintiff's apartment at the time.  *Id.*  Plaintiff states that the final repair had been completed before the inspection deadline, but "[i]t had totally slipped my mind due to my memory problem," of which Plaintiff's apartment manager and his case manager, Susana Soto ("Soto"), were aware.  *Id.*  OHA did not pay its rent portion for Plaintiff's apartment.  *Id.*

On July 3, 2018, when Plaintiff inquired why OHA had not paid its rent portion for his apartment, Plaintiff was informed that the computer system reflected that he did not want to live in the apartment anymore, even though he had told Soto that he wanted to remain at the apartment.  *Id.*  Plaintiff then provided the OHA receptionist with a statement confirming that he wanted to remain in his apartment.  *Id.*

On July 9, 2018, Plaintiff received a "'Housing Choice Voucher Termination Notice' due to a failed inspection," and Soto confirmed that the termination was due to a failed inspection.  *Id.*  Plaintiff called an OHA inspector, who said she would inspect the apartment so that Plaintiff's housing voucher could be reinstated.  *Id.*  The OHA inspector came to the apartment to conduct the inspection, and the apartment passed.  *Id.* On July 20, 2020, Plaintiff called Soto to "tell her the good news," but Soto informed

---

[2] All page numbers refer to the CM/ECF pagination.

Plaintiff "her hands were tied" and that Plaintiff's housing voucher had been terminated. *Id.* Plaintiff told Soto about his desire to stay in the apartment because of the hardship a move would cause to Plaintiff and Plaintiff's son, but Soto said "her hands were tied" and told Plaintiff he needed to obtain a new housing voucher.[3] *Id.* at 2–3. Plaintiff states that he and his son "were hatefully & maliciously evicted by The OHA," including by Soto and her supervisor Angie Hanifin ("Hanifin"), who "helped make the decision," and were "discriminated against while being bullied into homelessness." *Id.* at 3.

Plaintiff moved out of the apartment in mid-August 2018 and was unable to get an apartment for a few months. *Id.* Plaintiff states that it was "extremely difficult for me to get an apartment unlike before." *Id.* Over the course of the next 9 months, Plaintiff wrote to the OHA Director, Margery Pierce ("Pierce") eight or nine times, and made a Reasonable Accommodation Request ("RAR"). *Id.* Plaintiff does not describe what the RAR requested. Plaintiff alleges Pierce never answered and passed the emails to Hanifin. *Id.* at 3.

Because of Plaintiff's housing voucher termination, Plaintiff and Plaintiff's son did not have housing for months. *Id.* While Plaintiff was homeless, Child Protective Services took custody of Plaintiff's son. *Id.*

**B. Third Reasonable Accommodation Request**

Plaintiff states that Plaintiff's psychiatrist informed him that he had post-traumatic stress disorder ("PTSD") on top of his "major depression," and that as a result he had "developed an issue with making initial contacts with the property managers." *Id.* at 4. Plaintiff's psychiatrist made an RAR to Pierce on Plaintiff's behalf, seeking assistance in securing a place for Plaintiff and his son. *Id.* This resulted in a meeting between Plaintiff and Hanifin at an unidentified time. *Id.* Hanifin apparently told Plaintiff that OHA is not

---

[3] It is not clear from the 5AC whether Plaintiff is alleging that he made a Reasonable Accommodation Request to Soto to receive an extension for the housing inspection.

required to help Plaintiff and only is required to provide him with a listing of rental units. *Id.*  Plaintiff said the only assistance he needed was for someone at OHA to call ahead to the apartments and announce that he would be stopping by to fill out an application for an apartment. *Id.* at 4–5.  This RAR was denied. *Id.*

In the 5AC, Plaintiff does not state what relief he is seeking.  In the Fourth Amended Complaint, Plaintiff had sought damages for the over 18-month period during which he experienced homelessness, the 12-month period during which his family "had been torn apart," the "traumatic affects [sic] homelessness [and] 12+ months that CPS custody has had on [his son], and the two year period he had to endure with "extreme pain in [his] hip that was in need of surgery."  ECF No. 16 at 5.

## III.    DISCUSSION

### A. Legal Standard under 28 U.S.C. § 1915(e)(2)(B)

An action filed by a litigant proceeding IFP "shall" be dismissed if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (noting that 28 U.S.C. § 1915(e)(2)(B) is not limited to prisoners).  When considering the pleadings of *pro se* litigants, the Court interprets pleadings "liberally."  *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).   In giving liberal interpretation to a *pro se* civil rights complaint, however, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Federal Rule of Civil Procedure 8

Rule 8(a)(3) states that a complaint for relief must contain "a demand for the relief sought."  Fed. R. Civ. P. 8(a)(3).  A well-pleaded complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).  Some indication of the relief sought is necessary to permit the defendant to have fair notice of the claim.  *Cf.*

5

*McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).  Plaintiff's 5AC is missing any description whatsoever of the relief he seeks (for example, monetary damages).  While the Court recognizes that Plaintiff's previous complaints indicated he is seeking monetary damages, an amended complaint completely replaces the earlier complaints and the Court cannot consider information in the earlier complaints.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *as amended* (May 22, 1992).

The Court therefore finds that the 5AC must be dismissed because Plaintiff has not stated what relief he is seeking and the Court accordingly cannot conclude that the 5AC states a claim for relief.  However, the Court will grant Plaintiff leave to amend. The Court cautions Plaintiff that his Sixth Amended Complaint must be complete in itself without reference to prior complaints or filings, and that any claim not re-alleged in the new amended complaint will be considered waived.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

### C. Section 504 of the Rehabilitation Act

Because the Court will grant Plaintiff leave to amend, the Court also considers whether Plaintiff has stated a claim under the Rehabilitation Act,[4] to allow Plaintiff to fix any deficiencies in his complaint prior to refiling.

The Ninth Circuit has held that Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which prohibits discrimination on the basis of disability by programs receiving federal financial assistance, creates a private right of action.  *Kling v. Los Angeles Cty.*, 633 F.2d 876, 878 (9th Cir. 1980).  "[S]ection 504 guarantees 'meaningful access' to programs or activities receiving federal financial assistance for otherwise qualified

---

[4] Plaintiff's complaint includes statements suggesting that Defendants failed to comply with certain requirements of the housing voucher program.  *See* 5AC at 4.  However, as Plaintiff's claim appears to be based solely on Defendants' alleged discrimination on the basis of his disability, the Court analyzes his complaint under the Rehabilitation Act.

6

1  handicapped individuals." *Bonner v. Lewis*, 857 F.2d 559, 561 (9th Cir. 1988) (quoting

2  *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).  "[T]o assure meaningful access,

3  reasonable accommodations in the . . . program or benefit [receiving federal financial

4  assistance] may have to be made." *Id.*

5      To state a claim under the Rehabilitation Act, "a plaintiff must show that (1) she is

6  [disabled[5]] within the meaning of the [Rehabilitation Act]; (2) she is otherwise qualified

7  for the benefit or services sought; (3) she was denied the benefit or services solely by

8  reason of her [disability]; and (4) the program providing the benefit or services receives

9  federal financial assistance." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

10 "A failure to provide reasonable accommodation can constitute discrimination under

11 section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir.

12 2002).  To obtain damages under the statute, a plaintiff must also show that the defendant

13 acted with deliberate indifference.  *See Lovell*, 303 F.3d at 1056.

14      i.   Federal Assistance

15      Plaintiff states that OHA administered the Section 8 housing program, seemingly

16 referring to the housing choice voucher program funded by the federal government.

17 From this, the Court can gather that Plaintiff alleges discrimination in a program that

18 receives federal financial assistance.  At this stage, the Court need not determine whether

19 OHA in fact receives such assistance.  *See Bonner*, 857 F.2d at 563 ("Whether the prison

20 or its programs receive federal financial assistance is a question of fact to be resolved in

21 the district court.").  The Court finds that Plaintiff adequately alleges the program at issue

22 receives federal financial assistance.

23 \ \ \

24 \ \ \

25

26 ————————————

27 [5] The Rehabilitation Act now uses the term "disability" rather than "handicap."  29 U.S.C. § 794.

28                                        7

ii.   <u>Individual with a Disability</u>

For the purposes of a Rehabilitation Act claim, in order to be considered an individual with a disability, the person must have "a physical or mental impairment that substantially limits one or more major life activities," have "a record of having such an impairment," or be "regarded as having such an impairment."  42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B) (incorporating ADA definition).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2).  "'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. § 1630.2.

Plaintiff states that he suffers from depression and post-traumatic stress disorder ("PTSD").  Plaintiff alleges that this has caused him problems in contacting property managers, as corroborated by his psychiatrist.  5AC at 4.  Interacting with others has been found to be a "major life activity."  *See Weaving v. City of Hillsboro*, 763 F.3d 1106, 1113 (9th Cir. 2014).  However, mere interpersonal problems do not amount to a disability; rather, a plaintiff must show that her "relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary."  *Id.* (quoting *McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999)).  At this stage, the Court finds that Plaintiff has sufficiently alleged that his PTSD and depression are impairments that substantially limit his ability to communicate.

Plaintiff also indicates that he has a "memory problem," 5AC at 2, but does not allege that this problem is the result of any mental impairment or that it substantially limits any major life activities.  The Court therefore finds that the 5AC does not adequately allege Plaintiff has a memory-related disability.

\ \ \

\ \ \

8

iii.   Otherwise Qualified for Program

A person is "otherwise qualified" under Section 504 if she "is able to meet all of a program's requirements in spite of" the disability. *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979); *see also Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1205 (9th Cir. 1984) (defining "otherwise qualified" as meeting all program requirements other than those that are "unreasonable and discriminatory").

Based on the Court's initial review of the 5AC, Plaintiff appears to allege that he would have been otherwise qualified for the housing voucher program had he received what he claims are reasonable accommodations for his disability. Accordingly, at this stage, the Court determines that Plaintiff has adequately alleged he was otherwise qualified for the program.

iv.   Discrimination through Denial of a Reasonable Accommodation

As noted above, the failure of the defendant to provide a reasonable accommodation for the plaintiff's disability can constitute discrimination under the Rehabilitation Act. *See Vinson*, 288 F.3d at 1154; *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010). While Section 504 "does not require 'substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals,' it . . . does require *reasonable* modifications necessary to correct for instances in which qualified disabled people are prevented from enjoying '"meaningful access" to a benefit because of their disability.'" *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) (quoting *Southeastern Community College*, 442 U.S. at 410). A requested accommodation must be "reasonable on its face, i.e., ordinarily or in the run of cases," or must be "reasonable on the particular facts" of the case. *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)). "Reasonableness 'depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to

9

1    [enjoy meaningful access to the program.]'" *Hamamoto*, 620 F.3d at 1098 (quoting

2    *Vinson*, 288 F.3d at 1154) (alterations in original).

3         Here, Plaintiff indicates that OHA discriminated against him in three incidents: (1)

4    cancelling his housing voucher after the missed inspection and refusing to reinstate it

5    upon completion of the belated inspection; (2) refusing to grant Plaintiff's RAR that he

6    emailed to Pierce after moving out of his apartment; and (3) refusing to grant the RAR

7    submitted by Plaintiff's psychiatrist that requested OHA's assistance in contacting

8    property managers so that Plaintiff could apply to apartments.

9         It follows that in order to state a Rehabilitation Act claim based on denial of a

10   reasonable accommodation, a plaintiff must first request an accommodation.  *See*

11   *Colombini v. Members of Bd. of Directors of Empire Coll. Sch. of Law*, 2001 WL

12   1006785, at *7 (N.D. Cal. Aug. 17, 2001), *aff'd sub nom. Colombini v. Members of Bd. of*

13   *Directors*, 61 F. App'x 387 (9th Cir. 2003).  It is unclear from the 5AC whether Plaintiff

14   requested a disability accommodation from OHA with respect to the late housing

15   inspection, and if so, what accommodation he requested and for what disability.  Nor has

16   Plaintiff otherwise explained how the cancellation of his voucher was based solely on his

17   disability, rather than on the fact that he had not passed the housing inspection on time.

18   Additionally, as noted above, Plaintiff has not adequately alleged that he has a memory-

19   related disability that significantly interferes with major life activities.  Thus, Plaintiff

20   does not adequately allege this event denied him access to the housing voucher program

21   solely as a result of his disability.  Plaintiff's complaint therefore does not state a claim

22   arising from the initial cancellation of his housing voucher or refusal to reinstate because

23   of the missed inspection.

24        With regard to the second incident, Plaintiff does not explain what disability

25   accommodation he requested in his emails to Pierce, or why he was unable to access the

26   voucher program without this accommodation.  Plaintiff has therefore not alleged facts

27

28                                          10

that would show he was denied a reasonable accommodation when Pierce did not respond to his emails.

As to the third incident, Plaintiff states that his psychiatrist helped him submit an RAR that requested OHA to provide assistance in contacting property managers, and that OHA denied this request.  5AC at 4–5.  Taking the facts in the complaint as true, Plaintiff appears to allege that he was not able to meaningfully access the housing voucher program without an accommodation because continued participation in the program required him to contact property managers, which he was unable to do because of his disability.  At this stage, the Court also finds that the requested accommodation was facially reasonable.  While a defendant cannot be compelled to make a requested accommodation if it requires a fundamental alteration of the program or imposes an undue burden, the fact that an accommodation may bring about additional costs does "not *automatically* disqualify a requested accommodation."  *Giebeler*, 343 F.3d at 1152 (emphasis in original); *Pierce v. Cnty of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008).

Whether the accommodation is in fact reasonable is highly fact-specific, and thus the Court need not resolve this question in determining whether Plaintiff's complaint should be *sua sponte* dismissed for failure to state a claim.  *See Disabled in Action v. Board of Elections in the City of New York*, 752 F.3d 189, 202 (2d Cir. 2014) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003)) ("'[I]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' and once this is done 'the risk of nonpersuasion falls on the defendant.'"); *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995) (summary judgment is appropriate only "in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.").

Accordingly, the Court finds that Plaintiff has plausibly alleged that he was discriminated against by OHA's denial of the RAR that sought OHA's assistance in contacting property managers on his behalf.

11

v. <u>Deliberate Indifference</u>

Compensatory damages are only available under the Rehabilitation Act if the defendant acted with deliberate indifference. *Lovell*, 303 F.3d at 1056. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* (quoting *Duvall v. County of Kitsap,* 260 F.3d 1124, 1139 (9th Cir. 2001)). The defendant has the requisite knowledge when the defendant "has notice that an accommodation is required," and fails to act when the defendant's failure to provide the accommodation "involves an element of deliberateness." *Id.*

As noted, Plaintiff does not state in the 5AC what relief he seeks. However, because Plaintiff's previous complaint indicates that he seeks damages, the Court will address the deliberate indifference standard in the event that Plaintiff amends his complaint to include a request for damages. With respect to the first two incidents described above—namely, the cancellation of Petitioner's housing voucher due to his delayed housing inspection and Pierce's failure to respond to the emails sent by Plaintiff that included an unspecified RAR—Plaintiff has not adequately alleged that OHA knew that he required an accommodation and deliberately failed to provide it. As to the RAR submitted by Plaintiff's psychiatrist, however, Plaintiff sufficiently alleges that OHA had notice of the required the accommodation and deliberately refused to provide it.

Thus, if Plaintiff includes a request for compensatory damages in his Sixth Amended Complaint, the Court would find that he likely can allege deliberate indifference with respect to the actions taken in response to the RAR submitted by Plaintiff's psychiatrist, but not with respect to two prior incidents.

vi. <u>Summary</u>

While Plaintiff's 5AC must be dismissed because of his failure to request any relief, the Court finds that the allegations are otherwise potentially sufficient to state a claim under Section 504 of the Rehabilitation Act arising from Defendants' denial of the

RAR submitted by Plaintiff's psychiatrist.[6]  However, the Court finds that the allegations with respect to (1) the initial cancellation and refusal of reinstatement of Plaintiff's housing voucher and (2) the emails Plaintiff sent to Pierce regarding an unspecified RAR are not sufficient to support a Rehabilitation Act claim.  If Plaintiff wishes to allege a Rehabilitation Act claim arising from these incidents, he must fix the issues identified above.

### D. Leave to Amend

"A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Cato v. United States*, 10 F.3d 1103, 1106 (9th Cir. 1995) (citing *Noll v. Carlson*, 803 F.2d 1446, 1448 (9th Cir. 1987)).  However, where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate.  *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

As noted above, the Court will grant Plaintiff leave to amend to cure the deficiencies identified above.  If Plaintiff wishes to do so, Plaintiff must file a Sixth Amended Complaint within 30 days of the publication date of this order.  Plaintiff is reminded that he must re-allege any claims he wishes to bring in the Sixth Amended Complaint; he cannot rely on information alleged in earlier filings.  The Court further cautions Plaintiff that any further failures to fix the deficiencies in his complaint may lead to dismissal without leave to amend.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

\ \ \

\ \ \

---

[6] The Court notes that *sua sponte* screening under Section 1915 is not intended to be a replacement for a motion to dismiss filed by a defendant.  Thus, defendants are not precluded from challenging this claim merely because the Court did not decide it was subject to dismissal *sua sponte*.  *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

13

## IV.     CONCLUSION

For the reasons set forth above, the Court **DISMISSES** the Fifth Amended Complaint under 28 U.S.C. § 1915(e)(2).  Plaintiff is **GRANTED** 30 days to cure the deficiencies in his Fifth Amended Complained, as outlined above, by filing a Sixth Amended Complaint.

The Court also clarifies that Plaintiff shall not be required to personally serve Defendants his Sixth Amended Complaint.  Pursuant to Rule 4(c)(3), the Court shall direct the U.S. Marshals to effect service of the complaint at Plaintiff's request should Plaintiff's Sixth Amended Complaint not be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Court additionally **DENIES** as moot Plaintiff's pending requests for entry of clerk default (ECF Nos. 84–88).

**IT IS SO ORDERED.**

Dated:  May 12, 2021

Hon. Gonzalo P. Curiel
United States District Judge

14